Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4682 | **DATE** | 3/29/2001 |
| **CASE TITLE** | ANNA HALL vs. CITY OF CHICAGO | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAR 30 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION.

| | |
|---|---|
| ANNA HALL, | |
| Plaintiff, | Case No. 99 C 4682 |
| v. | The Honorable John W. Darrah |
| CITY OF CHICAGO, | |
| Defendant. | |



## MEMORANDUM OPINION AND ORDER

Plaintiff Anna Hall ("Hall") filed a one-count Second-Amended Complaint against Defendant City of Chicago ("the City") for sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e) et seq., and 42 U.S.C. § 1981. (2A. Compl.).

Defendant has moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 (7th Cir. 1997). The movant bears the initial burden of establishing that the record presents no genuine issue of material fact. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). Then the burden shifts to the non-

moving party to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

The nonmovant cannot succeed in creating a factual dispute solely by resting on allegations in the pleadings but must produce evidence showing there is a disputed issue for trial. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). In order to withstand summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## **FACTS**

Considering the undisputed facts from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and drawing all reasonable inferences from the evidence in Plaintiff's favor, the facts, for purposes of resolving the summary judgment motion, are as follows.[1]

On May 9, 1994, Plaintiff Anna Hall received her plumbing license, after successfully passing the plumbing examination. (Pl.'s 56.1 ¶ 4). She had worked as an apprentice plumber for five years before taking the test. (Pl..'s 56.1 ¶ 6). Plaintiff began working for the City of Chicago Department of Water as a plumber on August 16, 1995. (Def.'s 56.1 ¶ 13). Since May, 1997, Plaintiff has been employed as a plumber at the Department's Bureau of Water Pipe Distribution for the South District. (Def.'s 56.1 ¶ 14).

---

[1] Consideration of the 56.1 fact statements was limited to those which were properly made in accordance with LR 56.1, FED.R.CIV.P. 56(e), and the Federal Rules of Evidence.

Richard Green is the General Superintendent in charge of the South District. (Def.'s 56.1 ¶ 36). Reporting to him is District Superintendent Mulbe Dillard, Sr. (Def.'s 56.1 ¶ 36). Assistant District Superintendent Flenory Barnes reports to Dillard. (Def.'s 56.1 ¶ 36). Four District Foremen report to Barnes. (Def.'s 56.1 ¶ 36).

Acting foremen are individuals designated to assume the role and responsibilities of a foreman when there is a vacancy within a District and a pressing need to have it filled. (Def.'s 56.1 ¶ 27). The General Superintendents of the Districts are responsible for selecting individuals that they deem to be qualified to take the position. (Def.'s 56.1 ¶ 27). There is no formal application process for the position of acting foreman. (Pl.'s 56.1 ¶ 21, 22). Often, friends of the supervisors are named to be acting foremen. (Pl.'s 56.1 ¶ 21, 22). Plaintiff has never been named to be an acting foreman. (Pl.'s 56.1 ¶ 34).

*Promotional Procedure*

Each candidate is interviewed by one or more individuals who usually hold supervisory positions within the Water Department. (Def.'s 56.1 ¶ 42). The interviewers do not see the personnel file of any applicant at any time. (Def.'s 56.1 ¶ 43). Each applicant is interviewed separately. (Def.'s 56.1 ¶ 44). Each interviewer is responsible for documenting his or her assessment of a candidate's qualifications. (Def.'s 56.1 ¶ 46). The interviewers rank the candidates in different categories, assigning scores of 1 to 5. (Def.'s 56.1 ¶ 46). Using a formula explained on the ratings sheets, the rankings are totaled to attain a composite score. (Def.'s 56.1 ¶ 46). There is an additional form entitled, "Interviewer's Evaluation of Applicant." (Def.'s 56.1 ¶ 46). It provides space for the interviewer to insert handwritten comments about the candidate's previous work experience. (Def.'s 56.1 ¶ 46). The interviewer also circles one of three categories describing the

candidate as "below requirements," "meets requirements," or "exceeds requirements." (Def.'s 56.1 ¶ 36). After the interviews are concluded, a document is generated by the Bureau secretary listing all applicants who were interviewed for the position and their respective overall ratings. (Def.'s 56.1 ¶ 47). The Commissioner of the Department generally approves hiring the candidate with the highest overall rating score without conducting any independent review of that candidate's qualifications. (Def.'s 56.1 ¶ 50).

*Plaintiff's Interview Experiences*

In August of 1997, Plaintiff submitted a bid application for a District Foreman of Water Pipe Construction position. (Def.'s 56.1 ¶ 52). No interviews were conducted. (Def.'s 56.1 ¶ 52). On or about December 8, 1997, Plaintiff was notified by letter that the position would not be filled. (Def.'s 56.1 ¶ 52).

In August of 1997, Plaintiff submitted a bid application for a Plumbing Inspector position in the Department of Water. (Def.'s 56.1 ¶ 53). No interviews were conducted. (Def.'s 56.1 ¶ 53). On or about December 12, 1997, Plaintiff was notified by letter that the position would not be filled. (Def.'s 56.1 ¶ 53).

In January of 1998, Plaintiff submitted a bid application for a Foreman of Water Pipe Construction position. (Def.'s 56.1 ¶ 54). Thereafter, the bid was canceled. (Def.'s 56.1 ¶ 54). On or about January 29, 1998, Plaintiff was notified by letter that no bids would be accepted for this position. (Def.'s 56.1 ¶ 54).

About February 12, 1998, Plaintiff submitted a bid application for a District Foreman of Water Pipe Construction position. (Def.'s 56.1 ¶ 55). Thirty-seven eligible individuals interviewed for this position. (Def.'s 56.1 ¶ 55). Plaintiff was interviewed on or about June 11, 1998 by General

Superintendent Richard Green. (Def.'s 56.1 ¶ 55). Green had heard from Plaintiff's supervisors that she had problems getting along with people and that there were frequent arguments and conflicts on the jobs on which she worked. (Def.'s 56.1 ¶ 55). Green gave Plaintiff a score of 2.0 out of 5.0 in the following categories: "Qualifications and Previous Work Experience," "Previous Performance of Similar Duties with the Bureau," and "Written Communication Skills." (Def.'s 56.1 ¶ 55). Plaintiff's overall rating was 2.0. (Def.'s 56.1 ¶ 55). She was not rated the most qualified of the candidates. (Def.'s 56.1 ¶ 55). Green noted that Plaintiff "lacks quality work experience and written and oral skills." (Def.'s 56.1 ¶ 55). The male employee who received the job received an overall rating of 5.0. (Def.'s 56.1 ¶ 55). Plaintiff received the third lowest rank. (Def.'s 56.1 ¶ 55).

In February of 1998, Plaintiff submitted a bid application for one of the Plumbing Inspector positions in the Department of Water with assigned Bid Number 05598014. (Def.'s 56.1 ¶ 56). A Plumbing Inspector is responsible for inspecting work performed by the plumbing crews. (Def.'s 56.1 ¶ 56). Eleven eligible candidates were interviewed for these positions. (Def.'s 56.1 ¶ 56). Plaintiff was interviewed on March 26, 1998 by then-Plumbing Inspector in Charge Thomas Haggerty, Assistant Chief Plumbing Inspector Robert Kendrick, and Assistant Chief John Griffin. (Def.'s 56.1 ¶ 56). Plaintiff was scored in the categories of "Qualified and Related Previous Experience," "Previous Preferred Similar Duties with City," "Written Communication Skills," and "Oral Communication Skills." (Def.'s 56.1 ¶ 56). Plaintiff was not rated the most qualified by any of the three interviewers. (Def.'s 56.1 ¶ 56). She received overall ratings of 3.25 from Haggerty, a 3.5 from Griffin, and 3.25 from Kendrick. (Def.'s 56.1 ¶ 56). The male employees who received the positions received composite scores of 4.0 and 4.25. (Def.'s 56.1 ¶ 56).

On February 12, 1998, Plaintiff submitted a bid application for a Plumbing Inspector position

in the Department of Water with assigned Bid Number 05598015. (Def.'s 56.1 ¶ 57). Seven eligible individuals interviewed for this position. (Def.'s 56.1 ¶ 57). Plaintiff was interviewed on May 8, 1998 by then-Plumbing Inspector in Charge Thomas Haggerty, Employee Relations Supervisor Mark Kochan, and Assistant Chief Plumbing Inspector Robert Kendrick. (Def.'s 56.1 ¶ 57). Plaintiff was not rated the most qualified. (Def.'s 56.1 ¶ 57). The two male candidates who received the highest scores were awarded the promotions. (Def.'s 56.1 ¶ 57).

In March of 1998, Plaintiff submitted a bid application for a District Foreman of Water Pipe Construction position with Bid Number 05598052. (Def.'s 56.1 ¶ 58). No interviews were conducted, and the position was not filled. (Def.'s 56.1 ¶ 58).

In the Spring of 1998, Plaintiff submitted bid applications for a number of Plumbing Inspector positions in the Department of Water. (Def.'s 56.1 ¶ 59). Plaintiff was interviewed on July 30, 1998. (Def.'s 56.1 ¶ 59). She received a composite score of 2.5. (Def.'s 56.1 ¶ 59). The four male candidates who received the highest scores received offers of promotion. (Def.'s 56.1 ¶ 59).

In June of 1998, Plaintiff submitted a bid application for a District Foreman of Water Pipe Construction position. (Def.'s 56.1 ¶ 60). On or about January 27, 1999, Plaintiff received a letter advising her that the position would not be filled. (Def.'s 56.1 ¶ 60).

In August of 1998, Plaintiff submitted bid applications for Foreman of Water Pipe Construction positions. (Def.'s 56.1 ¶ 61). Twenty-four eligible individuals were interviewed for these positions. (Def.'s 56.1 ¶ 61). Plaintiff was interviewed by Assistant Commissioner White. (Def.'s 56.1 ¶ 61). She was not rated the most qualified, receiving an overall rating of 3.2. (Def.'s 56.1 ¶ 61). The 10 male candidates who received offers of promotion received scores of 4.6 or

higher. (Def.'s 56.1 ¶ 61).

In September of 1998, Plaintiff submitted a bid application for a Plumbing Inspector position in the Department of Water. (Def.'s 56.1 ¶ 62). Seven eligible individuals were interviewed for this position. (Def.'s 56.1 ¶ 62). The interviews were conducted by Plumbing Inspector Michael McGinnis, Plumbing Inspector in Charge James Marsh, and Plumbing Inspector in Charge Chester Szorc. (Def.'s 56.1 ¶ 62). Plaintiff was interviewed on October 30, 1998. She was not rated the most qualified. (Def.'s 56.1 ¶ 62). Five male applicants who received higher ratings than Plaintiff were promoted. (Def.'s 56.1 ¶ 62).

In April and August of 1999, Plaintiff submitted bids for Plumbing Inspector positions in the Department of Water, which were never filled. (Def.'s 56.1 ¶ 63, 64).

On April 15, 1998, Plaintiff submitted a bid application for vacant Building Department Plumbing Inspector positions. (Def.'s 56.1 ¶ 68). Eight people were interviewed for these positions. (Def.'s 56.1 ¶ 68). Plaintiff was interviewed on May 21, 1998 by Assistant Chief Plumbing Inspector Donald Monreal, Plumbing Inspector in Charge Daniel J. Boyle, and Edward Severns. (Def.'s 56.1 ¶ 68). Out of ten true/false questions asked, Plaintiff, she answered at least 6 incorrectly. (Def.'s 56.1 ¶ 68). Each interviewer scored the candidates in the categories of: "work experience," "training," "communication skills," and "technical knowledge." (Def.'s 56.1 ¶ 68). Plaintiff was not rated as the most qualified of the candidates. (Def.'s 56.1 ¶ 68). Severns noted that she was "well below average in knowledge as well as communication skills." (Def.'s 56.1 ¶ 68). The three top scorers (all male) received offers of promotion. (Def.'s 56.1 ¶ 68).

In June of 1998, Plaintiff submitted a bid application for the Plumbing Inspector position in the Department of Buildings. (Def.'s 56.1 ¶ 69). Only three applicants interviewed for this position.

(Def.'s 56.1 ¶ 69). The interviews were conducted by Timothy Cullerton, Bill Rooney, and Don Monreal. (Def.'s 56.1 ¶ 69). Plaintiff was interviewed on September 1, 1998. (Def.'s 56.1 ¶ 69). Plaintiff received an overall ranking of 2.9. (Def.'s 56.1 ¶ 69). The highest scoring candidate received a score of 3.2. (Def.'s 56.1 ¶ 69). He received the promotion.

Bob Megro, Plaintiff's supervisor, gave her excellent performance ratings. (Pl.'s Resp. to Def.'s 56.1 ¶ 55). Richard Green believes that Plaintiff has a "problem getting along with people," and experiences "conflicts on the job." (Green Dep. at 33). At one point, Assistant Superintendent Flenory Barnes called Plaintiff a "bitch." (Pl.'s 56.1 ¶ 43). He was forced to apologize. (Pl.'s 56.1 ¶ 43). On June 9, 1998, Plaintiff filed a grievance against Sam Lowery, who was an acting foreman, for his vulgar language directed at Plaintiff, which allegedly included telling her to "kiss his ass" and "fuck you." (Pl.'s 56.1 ¶ 45). Plaintiff made repeated complaints about the language of various supervisors and fellow employees. (Pl.'s 56.1 ¶ 58, 64, 66).

Andrew Melleski received a promotion for a position for which he did not score lower than Plaintiff. (Def. Res. to facts at ¶ 97). Likewise, Raymond Bynum received higher scores than Plaintiff for the promotion that he ultimately received. (Def.'s 56.1 ¶ 57).

## ANALYSIS

Plaintiff's Title VII claims take three forms: discrimination, retaliation, and failure to promote.[2]

---

[2] In Plaintiff's Response to Defendant's Motion for Summary Judgment, she alleges that Defendant was aware of the "sexually hostile work environment." As the Plaintiff points out, the burden for establishing a hostile work environment claim under Title VII is different from other Title VII claims. *See e.g., Saxton v. A.T. & T.*, 10 F.3d 526, 534 (7th Cir. 1993). The comments and conduct to which Plaintiff refers (Pl. Res. 3-6) will therefore be considered as circumstantial evidence of her other claims.

-8-

*Discrimination*

Plaintiff contends that Defendant City of Chicago discriminated against her in violation of Title VII when it failed to post bids for the position of Plumber Inspector in accordance with the labor contract, compelled Plaintiff to work on a truck which emitted toxic fumes, and failed to discipline a management employee who called Plaintiff a "bitch."

In this case, Plaintiff has presented no direct evidence of discrimination but has attempted to prove discrimination indirectly by arguing that she was treated differently from other similarly situated employees because of her sex. To prove discrimination indirectly, Plaintiff must establish that: (1) she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was meeting her employer's legitimate performance expectations; and (4) that her employer treated similarly situated employees who were not in the protected class more favorably. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 751 (7th Cir. 2000). Plaintiff's claims of discrimination fail because she has not met her burden of establishing the second and fourth elements.

Defendant's failure to adequately publicize promotional opportunities, use of potentially dangerous equipment, and failure to discipline a management employee who called Plaintiff a "bitch" do not constitute "adverse employment actions" actionable under Title VII. The Seventh Circuit explained what constitutes a "materially adverse employment action" in *Crady v. Liberty National Bank and Trust Co. of Indiana*, 993 F.2d 132, 135 (7th Cir. 1993). It noted:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

-9-

In *Crady*, the Seventh Circuit found that a change in position from assistant vice-president and manager of one branch of a bank to a loan officer at a different branch did not, by itself, constitute an adverse employment action. *Id.* A Court does "not sit as a super-personnel department that reexamines an entity's business decisions." *Wolf v. Buss*, 77 F.3d 914, 920 (7th Cir. 1996).

Although an employer's failure to discipline an employee when he calls another a "bitch" might be evidence of a hostile work environment, in and of itself, it is not actionable under Title VII. In *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996), the Seventh Circuit found that a co-worker's description of a female employee as a "sick bitch," his statement to her "if you don't want me, bitch, you won't have a damn thing," and his use of an obscene gesture while telling the female employee to "suck this bitch" were not actionable under Title VII.

Plaintiff has also failed to meet her burden of raising a disputed issue of material fact as to whether employees outside the protected class were treated more favorably. Plaintiff has not shown that promotional opportunities were communicated to male but not female employees, that male employees were not exposed to the allegedly dangerous truck, or that male employees were never subjected to abusive language by co-workers.

### Retaliation

Plaintiff alleges that Defendant City of Chicago retaliated against her in violation of Title VII "for reporting the hazards associated with the toxic fumes being emitted from Truck No. 337." (2A. Compl. 4).

To establish a prima *facie case* of retaliation[3] under Title VII, Plaintiff must establish that: (1) she engaged in "statutorily protected expression"; (2) she suffered an adverse, job-related action by her employer; and (3) there is a causal link between her opposition to unlawful discrimination and the adverse employment action. *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1146 (7th Cir. 1997).

Plaintiff's claim of retaliation fails because she has not met her burden of showing the first and third elements of a retaliation claim. "Statutorily protected expression," under Title VII, consists of opposition to any employment practice made unlawful under Title VII. 42 U.S.C. § 2000e-3(a). Title VII was not intended to protect workers from hazardous conditions in the workplace. Plaintiff admits that the fumes she complained of were "in violation of OSHA standards." (Compl. 4). Therefore, her complaints regarding OSHA violations do not constitute "protected expression" qualifying for protection from retaliation under Title VII.

Furthermore, Plaintiff fails to show the third element, in that she has not established a causal connection between the allegedly protected conduct and any adverse action. Summary Judgment is therefore granted on Plaintiff's retaliation claim.

*Failure to Promote*

Plaintiff alleges that Defendant discriminated against her when it failed to promote her to the

---

[3] Title VII, 42 U.S.C. § 2000e-3(a) reads in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice, by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

positions of Plumbing Inspector, District Foreman of Water Pipe Construction, and Foreman of Water Pipe Construction. (2A.Compl. 3). Plaintiff has attempted to prove indirectly that Defendant failed to promote her for discriminatory reasons.

To prove a *prima facie* case of failure to promote, Plaintiff must show that: (1) she applied for a promotion; (2) she was entitled to the promotion; and (3) the individual promoted had the same or lesser qualifications. *Bragg v. Navistar International Transportation Corp.*, 164 F.3d 373, 376 (7th Cir. 1998). If Plaintiff makes a *prima facie* case, the burden shifts to Defendant to show legitimate nondiscriminatory reasons for the non-promotion; if Defendant does that, the "employee must demonstrate that those reasons are lies." *Brill v. Lante Corporation*, 119 F.3d 1266, 1269 (7th Cir. 1997). "Moreover, if the [defendant] honestly believed in those reasons, the plaintiff loses even if the reasons are foolish or trivial or even baseless." *Id.*

In this case, the Plaintiff has failed to meet her burden of raising a material issue of fact as to whether Defendant's stated reasons for not promoting her are pretextual. Plaintiff was interviewed by a number of different panels of interviewers. She was scored in areas which included previous work experience, supervisory experience, oral and written skills, and technical knowledge. Plaintiff has not provided evidence that any of the interviewers "did not honestly believe" their stated reasons for giving Ms. Hall the scores they did. "Just as a district court is not required to scour the record looking for a factual dispute, it is not required to scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

The evidence that Plaintiff does provide is insufficient to establish pretext. Plaintiff offers the assessment by Mr. Megaro that she was an excellent plumber. (Pl.'a 56.1 ¶ 11). However, this

-12-

assessment in no way contradicts the interviewers' assessments of Plaintiff's communication and interpersonal skills.

Plaintiff also cites vulgar comments by Flenory Barnes and co-workers as evidence that the rankings given in the evaluations were pretextual. However, Plaintiff has not shown that any of these statements were linked to the promotion decisions. The "plaintiff must show that the remarks 'were related to the employment decision in question.'" *Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1402 (7 th Cir. 1996).

Plaintiff argues that the fact that Andrew Melleski ultimately received a promotion when he scored lower than Plaintiff in one round of interviews means that Defendant's stated reason for not promoting her is pretextual. However, Melleski did not receive the promotion to the position for which he scored lower than Plaintiff in the interviews. Rather, he received a promotion for another position for which he did not score lower than Plaintiff. (Def. Res. to facts at ¶ 97). Likewise, Raymond Bynum received higher scores for the promotion that he ultimately received. (Def.'s 56.1 ¶ 57). Furthermore, Bynum had been Plaintiff's supervisor.

Plaintiff has not provided any evidence that the interviewers did not believe the stated reasons for their scoring. Plaintiff interviewed before a number of different panels made up of various supervisors. Time and again, she received lower scores than her peers. Once more, Plaintiff has failed to raise any material direct or indirect evidence linking Defendant's promotion decisions to her gender.

As to the position of acting Foreman, this was not a position Plaintiff cited in her Second-Amended Complaint. Therefore, Defendant's alleged failure to promote her to this position cannot allow her to survive summary judgment. "A plaintiff may not amend his complaint through

-13-

arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). However, even if the fact that Plaintiff was never named acting foreman is considered, Plaintiff's claim nonetheless fails since she has not shown that her employer's promotion decisions regarding the acting foreman position were based on gender.

Although Plaintiff claims that two individuals were promoted for positions for which she was told the bids were canceled, Plaintiff has not shown that the bid numbers for these positions were the same ones for which she applied. (Pl.'s 56.1 ¶ 94, 95).

Summary judgment is granted on Plaintiff's failure to promote allegations since she has failed to meet her burden of raising a material issue of fact as to whether Defendant's stated reasons for not promoting her are pretextual.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

John W. Darrah, Judge

United States District Court

Date: March 29, 2001

-14-